51 F.3d 417
 40 ERC 1513, 63 USLW 2651, 25 Envtl.
L. Rep. 21,122
 Nolan J. ADAMS; John G. Aiken, 4th; Adele C. Aiken; Craig
Alderman, Jr.; Ronnie Alderman; Michael J. Alexander;
Margaret Alexander; Peter W. Almquist; Karen G. Almquist;
Joseph J. Angelo; Donald S. Arnstein; Elaine P. Arnstein;
Robert A. Aserkoff; Francine R. Aserkoff; Richard Albert
Atwell; Mary E. Delaney; Alexander J. Balent; Audrey
Louise Balent; Michael J. Balgley; Peggy Balgley; George
A. Barten; Ortha E. Barten; Rose Marie Baumgarten; James
A. Bever; Barbara Bever; Frances H. Bicking; George M.
Bicking; Irene F. Bilger; Howard R. Bloch; Doris Bloch;
Peter Bockman; Barbara S. Bockman; Stephen W. Bolding;
Sherry M. Bolding; Sally Boucher; Philippe E. Boucher;
Terry D. Bradley; Jacqueline J. Bradley; John P. Brady;
Patricia S. Brady; William J. Brandel, Jr.; Dorothy M.
Brandel; James W. Breglio; Clare F. Breglio; William R.
Brenner; Joann Brenner; Patricia A. Brock; Richard S.
Bromberg; Francine W. Bromberg; Francis Gregory Brooks;
Carla O. Brooks; Sanford Brotman; Ellen Brotman; Richard
L. Browett; Bobby L. Brown; Ora J. Brown; Douglas A.
Brown; Anne R. Brown; Lloyd K. Brown; Sherry L. Brown;
Otis F. Bryan, Jr.; William C. Bryson; Phyllis W.
Bryson; Howard L. Bubel; Renate Bubel; John M. Buckley,
Jr.; Joan L. Buckley; Donald Richard Cake; Hollie Cake;
James W. Caldwell; Loretta M. Caldwell; William Campbell,
Jr.; Jane W. Campbell; Richard S. Cantwell; Agnes S.
Cantwell; Charles W. Cardiff; Dee A. Cardiff; Justin
Eugene Carlock; Thelma H. Carlock; Walter Carlson, Jr.;
Sigrid K. Carlson; Jay B. Carter; Mary L. Carter; Robert
James Chalfont; Judy K. Chalfont; N. Bruce Chase; Anne S.
Chase; Geraldine E. Christensen; James G. Cochran;
Caroline B. Cochran; Jean R. Cockrell; Robert L. Cockrell;
Robert Colby; Kimberlee W. Colby; Rosine A. Colford;
David H. Cook; Loy A. Cook; Anne E. Cowan; Ann L.
Cricchi; Vic Cricchi; Robert J. Cristina; Mary L.
Cristina; Steven W. Crutchfield; Margaret S. Crutchfield;
Kenneth George Davis, Jr.; Martha R. Davis; Timothy T. De
Gavre; Donald R. DeGrange; Barbara J. DeGrange; Stephen
A. Dehanas; Sinikka H. Dehanas; John P. Deleonardis;
Grace M. Deleonardis; Christopher J. Deering; Pricilla
Deering; J.P. Dempsey; Mary Ellen Dempsey; Jatin D.
Desai; Andrew Diantonio; Mary B. Diantonio; Roger A.
Diedrich; Mary E. Diedrich; Wayne N. Dixon; Veronica A.
Dixon; Virginia Q. Donelson; Margaret McElroy Dorsey;
David Downes; L. Willa Downes; Rudolph Harold Ehrenberg;
Sandra K. Ehrenberg; William E. Elder; Patricia A. Elder;
Ernest Ellis; Gerry Ellis; Paul E. Ellison; Patricia D.
Ellison; Mark H. Emery; Janice J. Emery; Paul M.
Eskildsen; Alison W. Eskildsen; Margaret H. Essertier;
Nelson Estrada; Olivia C. Estrada; Laurence E. Fann;
Victor Armando Farfan; W. Diane Farfan; Douglas C. Faull;
Cheryl A. Faull; Robert A. Feitel; Robert H. Ferguson;
Eleanor J. Ferguson; George R. Fister; Judith C. Fister;
Peter K. Fitzwilliam; Sondra K. Fitzwilliam; Suzanne M.
Fogleman; Rafael F. Font; Maria T. Font; James S.
Forcino; Joan B. Forcino; Gary J. Fortunato; Faye D.
Fortunato; Thomas R. Freeman; Ferris French; Doris G.
French; Salvatore F. Gallo; Joanne B. Gallo; James R.
Gear; Kathleen P. Gear; Keith B. Geiger; Janet K. Geiger;
James C. Gibbs; D.M. Gidders; Evangelia A. Gidders;
Robert James Gillanders; Emilie A. Gillanders; Dava R.
Giuli; John M. Giuli; Lew Goldberg; Laura Goldberg;
Arthur M. Golden; Charlotte Golden; Robert M. Goldsmith;
Nancy D. Goldsmith; Allen D. Goodman; Lorelei L. Goodman;
Betty J. Greene; Charles H. Griffiths; Barbara B.
Griffiths; Remer W. Griner; Shirley A. Griner; Harold J.
Gross; Andrea J. Gross; Edwin B. Gross; Mary Ellen Gross;
Joseph Francis Gustaferro; Frances Christine Gustaferro;
Robert W. Hall; James L. Hamernick; Margaret A. Banke;
Gregory L. Hansen; Linda J. Hansen; Elizabeth M. Harris;
Robert A. Harrison; Joyce E. Harrison; Richard L. Hart;
Jayne L. Hart; John P. Hartigan; Betty Hartigan; Douglas
J. Harwood; Joycene Cole Harwood; Richard L. Hatheway;
Kay E. Hathaway; William J. Haugh; Edward M. Haugh; Mary
Ellen Haugh; Mark S. Havard; Lisa A. Havard; Samuel James
Heath; James B. Hendershot; Patricia W. Hendershot;
Beverly Jean Henschel; Shujaat A. Khan; David L.
Herrington; Beverly B. Herrington; John C. Hile; Therese
F. Hile; Katsuko K. Hodge; Peter H. Hodge; Paul W.
Hoffmaster; William D. Hogan; Herbert A. Hope, Jr.;
William G. Howard; Hallie B. Howard; Arthur D. Hurtado;
Diane Hurtado; Thomas J. Ingram, III; Donald E. Inscoe;
Susan M. Inscoe; Martin M. Ischinger; Carol N. Ischinger;
Joseph A. Iwanski; Barbara A. Iwanski; Willis E. Jacobsen;
Jadwiga Janucik; Dennis C. Meyer; Henry D. Jawish; Harry
W. Johnson; Janice E. Johnson; Walter H. Johnson;
Margaret W. Johnson; Lucy M. Joshua; Paul M. Kaufman;
Masako Kaufman; Karl T. Keller; Javed A. Khokhar; William
F. Kirten; Nancy J. Kirten; George Frederick Knight;
Patricia F. Knight; Dean P. Kohlhaas; Jeanne A. Kohlhaas;
John L. Krug; William B. Kuykendall, Jr.; Edward R. Lang;
Martha C. Lang; Mark M. Langerman; Erika H. Langerman;
Helene Z. Layman; Harrison Lee; Maryrose Jane Lehman;
Stanley S. Leroy; Caroline F. Leroy; Robert E. Levin;
Karen J. Levin; Franklin D. Lewark; Wanda C. Lewark; Rene
F. Llaneras; Patricia C. Long; Robert R. Lovelace;
Barbara B. Lovelace; Michael Anthony Lynch; Maureen R.
Lynch; Vance A. Mall; Mary H. Mall; William R. Maloney;
Benedict P. Mandich; Carmen J. Mandich; Gary D. Mann;
Robbie E. Mann; Arthur Roy Marshall, Jr.; Susan H.
Marshall; William R. Martin; Mary A. Martin; Thomas B.
Mattson; Maria A. Mattson; Abdullah Mawyah; Kenneth S.
McAtee; Harry W. McClellan; Jane B. McClellan; James M.
McComsey; Gordon H. McCormick; David W. McCoy; Suzanne
McCoy; Ruby M. McGlothin; Alexander J. McKillop; Doreen
McKillop; Mark McNair; Elizabeth S. McNair; Archie
McPherson; Merle G. McPherson; John Lippincott Meagher;
John N. Meloy; Irene E. Meloy; George A. Mickalitis;
Caroline Mickalitis; Joe H. Miller, Jr.; Grace Miller;
John B. Montgomery; Edgar J. Mullins; Ellie Mullins;
Eudine C. Myers; Thomas J. Myers; Patricia Myers; Steve
C. Nagy; Kathryn J. Nagy; Nancy H. Newberry; Robert
Newberry; Fred J. Newton; Florence J. Newton; Robert
Charges Newton; Leilani L. Newton; Peter P. Noe; Susan N.
Noe; Carl W. Northrop; Michaelanne P. Northrop; David R.
Notes; John M. Oseth; Marilyn Oseth; Jacob J. Para;
Dolores A. Para; James Hodges Parker; Louise L. Parker;
James V. Parker; Hal C. Pattison; Cleda W. Pattison;
David Paxton; Kathleen Paxton; Howard Andrew Peterson;
Albert J. Plummer; Mary Jane Plummer; Michael A. Plunkett;
Clifford H. Pruefer; Mary Carolyn Pruefer; Richard L.
Purcell; Robin S. Purcell; Earle W. Putnam; Margaret R.
Putnam; Michael J. Quattrone; Kathy Quattrone; Rose M.
Rabin; William O. Rakow; Linda A. Rakow; John B. Rampton;
Jo Ann Rampton; Stephen C. Randolph; Barbara S. Randolph;
David Alan Rawson; Patricia Rawson; Charles W. Reamer;
Mary S. Reamer; Keith W. Reiss; Karen N. Reiss; Randall
R. Renken; Catherine B. Renken; Godfrey A. Rettig; Paula
R. Rettig; Marilyn E. Rice; Michael E. Richardson;
Jeannie N. Richardson; John H. Riskind; Laura Riskind;
William L. Rohde; Nancy E. Rohde; Robert J. Rohrback;
Sharon L. Rohrback; Steven F. Romig; Monica T. Romig;
Ralph Edwin Ropp; Frances H. Ropp; Jean Rosenfeld;
Jeffrey Rosenfeld; Thomas G. Roulette; Airi P. Roulette;
R.F. Rozycki; Thomas Rozzell; Maryanne Rozzell; Richard
E. Runyon; John L. Ryan; Oscar Ferdinand Rydell; Richard
T. Santelia; Carol P. Santelia; William P. Sargent; Jane
A. Sargent; Henry E. Schlenker; Gayle W. Schlenker; Jerry
E. Schultz; Sharon M. Shultz; John A. Scopino; Mary E.
Scopino; Cynthia Seeley; Stephen M. Sergek; Mary K.
Sergek; Maida Ludvik Sheris; Virginia S. Shreve; Laura
Lee Simpier; John E. Simpson, II; Barbara W. Simpson;
David Sims; Lily A. Sims; H. John Smith; Ronald E. Sorna;
Grace S. Spitz; Doris M. Spinivasan; John J. St. John;
Theodore C. Starr; Pamela G. Starr; Henry J. Staudinger;
Karen V. Staudinger; George E. Stebbing; Mary R. Stebbing;
Alice B. Steinbeck; James P. Stratoudakis; Gene Suidikas;
Barbara K. Suidikas; Edward L. Sullivan; Anne N.N.
Sullivan; Michael S. Swift; Bernace M. Symm; Ireene Symm;
James A. Taylor; Vernett M. Taylor; Kathryn E. Thiel;
Brenda Thomas; Charles A. Thomas; Alan R. Thompson; Nancy
J. Thompson; Allen R. Thuring; Evelyn C. Titus; Audrey
Topping; Mickey L. Topping; John A. Torre; Marie F.
Torre; Vinh P. Tran; Peter D. Trapp; Debbie J. Trapp;
Paul E. Troutman; Patricia R. Troutman; James K. Tyson,
Jr.; Sandra C. Tyson; Stanley M. Urynowicz, Jr.; Janet T.
Urynowicz; Mario Verga; Marianne E. Verga; Maureen E.
Walsh; Edward A. Waters; Ralph William Weinstein; Debby
Weinstein; Donna J. Wendling; Wells B. White; Clara L.
White; William S. Whitehead; Linda S. Whitehead; Barry R.
Wickersham; Martha F. Wiegers; Lester A. Wiegers; Arthur
G. Williams; Louise C. Williams; Tyler E. Williams,
Jr.; Carmen M. Williams; Thomas A. Witecki; Jerilyn S.
Woelfel; John C. Woelfel; Terje Wolden; Kari Wolden;
Judith A. Wonus; Jack Richard Woodside; Carol Woodside;
Alvaro A. Yamhure; Sandra M. Yamhure; Nora S. Zadd;
Charles J. Zadd; Joseph J. Zapolski; Celene J. Zapolski;
Ann J. Zeaman; Burton C. Zwibel, Plaintiffs-Appellants,
v.
STAR ENTERPRISE; Texaco, Inc.; Texaco Refining and
Marketing (East), Incorporated; Saudi Refining,
Inc., Defendants-Appellees.
 No. 94-1692.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1994.
Decided April 6, 1995.
 
 ARGUED: David Machanic, Reed, Smith, Shaw & McClay, McLean, VA, for appellants. Richard Edward Wallace, Jr., Howrey & Simon, Washington, DC, for appellees. ON BRIEF: Christopher L. Killion, Eric A. Welter, Reed, Smith, Shaw & McClay, McLean, VA, for appellants. Anthony F. King, Nancy C. Libin, Howrey & Simon, Washington, DC, John A.C. Keith, Blankingship & Keith, Fairfax, VA, for appellees.
 Before WILKINSON, Circuit Judge, PHILLIPS, Senior Circuit Judge, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 Affirmed by published opinion. Senior Judge LAY wrote the opinion, in which Judge WILKINSON and Senior Judge PHILLIPS joined.
 OPINION
 DONALD P. LAY, Senior Circuit Judge:
 
 BACKGROUND
 
 1
 Star Enterprise[1] operates an oil distribution facility in Fairfax, Virginia. The Environmental Protection Agency ("EPA") determined in April 1992 that a "major discharge" of oil had occurred at this facility. The discharge created a "plume" of oil extending underground into Mantua, a nearby residential subdivision. Certain property owners in Mantua (hereinafter "Landowners") brought this action for property damages although their properties are not presently contaminated by the underground plume. They seek damages for the diminution in the value of their property due to its proximity to the plume. They also assert that they were exposed to significant health risks due to fumes and vapors emanating from the contamination immediately after the spill, and that there has been a disruption of community life in Mantua because of Star Enterprise's remediation efforts.[2] The complaint is brought under claims of private nuisance, negligence, and strict liability.[3] The district court found that Virginia law does not permit recovery under the facts as alleged by Landowners and dismissed each count of the complaint under Fed.R.Civ.P. 12(b)(6). This appeal followed. We affirm.
 
 ANALYSIS
 
 2
 It is undisputed that Virginia law governs the disposition of this case. The fundamental issue presented is whether property owners may recover for the diminution in the value of their property and their reasonable fear of negative health effects resulting from the proximity of their property to an environmental hazard such as an underground oil spill.[4] Our review of existing Virginia case law convinces us that Landowners may not recover under any of the theories of liability they have advanced.
 
 1. Nuisance
 
 3
 Virginia's courts have defined a private nuisance as "an activity which unreasonably interferes with the use and enjoyment of another's property." City of Newport News v. Hertzler, 216 Va. 587, 221 S.E.2d 146, 150 (1976). An occupant's right to the use and enjoyment of land is to be broadly construed. Bowers v. Westvaco Corp., 244 Va. 139, 419 S.E.2d 661, 665 (1992). "The term 'nuisance' includes 'everything that endangers life or health, or obstructs the reasonable and comfortable use of property.' " National Energy Corp. v. O'Quinn, 223 Va. 83, 286 S.E.2d 181, 182 (1982) (quoting Barnes v. Quarries, Inc., 204 Va. 414, 132 S.E.2d 395, 397 (1963)). The district court dismissed the nuisance count of the complaint because it found the facts as alleged in the complaint did not create a significant interference with Landowners' use and enjoyment of their properties.
 
 
 4
 The complaint alleges that Landowners have been exposed to significant health risks resulting from fumes and vapors emanating from the oil spill. Landowners allege mere fear of significant health risks.[5] Landowners also claim residential life in Mantua has been disrupted by Star Enterprise's remediation efforts.[6] Similarly, they claim an unreasonable interference with the use and enjoyment of their properties because they reasonably fear that the oil spill may spread onto their properties in the future and because the value of their properties has been substantially reduced as a result of the "stigma" attached to the community because of the oil spill. Even under notice pleading, such speculative claims do not make out a cause of action for nuisance under Virginia law.
 
 
 5
 Landowners rely on Foley v. Harris, 223 Va. 20, 286 S.E.2d 186 (1982), in which the Virginia Supreme Court upheld a lower court's determination that a property owner had created a private nuisance by maintaining old junked automobiles on his property. The court enjoined the property owner from keeping the vehicles there. In so holding, the court stated "[t]he phrase 'use and enjoyment of land' is broad." Id. 286 S.E.2d at 190. On the authority of that case and others in Virginia that construe nuisance law broadly, Landowners urge reversal. See Bowers, 419 S.E.2d at 665.
 
 
 6
 Landowners' reliance on Foley is misplaced. In Foley, the unsightly automobiles were visible from the neighboring properties. Under Virginia law, in order to recover for a nuisance a property owner must show "the nuisance complained of will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities...." Bragg v. Ives, 149 Va. 482, 140 S.E. 656, 660 (1927) (quoting Herring v. Wilton, 106 Va. 171, 55 S.E. 546 (1906)). In all Virginia cases permitting recovery for nuisance, the activity or condition complained of was actually physically perceptible from the plaintiff's property. In the present case, the facts as alleged in the complaint indicate the underground oil spill is incapable of detection from Landowners' properties.
 
 
 7
 Analogous cases from other jurisdictions also suggest actions in nuisance may not be maintained under these circumstances. In Adkins v. Thomas Solvent Co., 440 Mich. 293, 487 N.W.2d 715 (1992), the Michigan Supreme Court declined to extend nuisance law to cover a factual situation comparable to this one, finding "[c]ompensation for a decline in property value caused by unfounded perception of underground contamination is inextricably entwined with complex policy questions regarding environmental protection that are more suitably resolved through the legislative process." Id. 487 N.W.2d at 717. Similarly, in Berry v. Armstrong Rubber Co., 989 F.2d 822, 829 (5th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994), the Fifth Circuit found Mississippi law would not support a claim for property damage based on "reduced market value caused by a 'stigma' absent some physical damage to plaintiffs' land...."[7] Id.
 
 
 8
 We find no Virginia case permitting recovery for a private nuisance which is not visible or otherwise capable of physical detection from the plaintiff's property. Thus, to permit a nuisance claim under these facts would extend Virginia nuisance law beyond its current boundaries. Absent a clear signal from Virginia's courts that they would approve such an extension, we decline to do so, especially in light of analogous case law from other jurisdictions which does not permit recovery under these circumstances.
 
 2. Negligence
 
 9
 The district court assumed that Landowners could demonstrate Star Enterprise's negligence caused the oil spill, but dismissed their negligence claims on the grounds that the oil spill was not the proximate cause of their alleged damages. Landowners make the same damage claims for both the nuisance and negligence counts. Absent a physical impact on Landowners' properties, however, these damages are no more compensable in a cause of action for negligence than in a cause of action for private nuisance under Virginia law.
 
 
 10
 In Hughes v. Moore, 214 Va. 27, 197 S.E.2d 214, 219 (1973), the Virginia Supreme Court observed that "where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone." Id. Rather, to recover for emotional disturbance, such as the fears and apprehensions claimed, a plaintiff must demonstrate by clear and convincing evidence that the emotional disturbance produced a physical injury. Thus, Landowners' fears of future harm and ill health effects from the migration of the oil spill are not compensable under Virginia law absent a showing of a physical impact or physical injury.[8]
 
 
 11
 As for the diminution in the value of Landowners' properties, we find Philip Morris, Inc. v. Emerson, 235 Va. 380, 368 S.E.2d 268, 282 (1988), instructive. In that case, deadly pentaborane gas was released from property adjoining a campground. As the court pointed out, "[t]here was no evidence that any of the pentaborane gas actually invaded the campground." Id. 368 S.E.2d at 282. The owner of the campground was ordered to evacuate the campground and suffered resulting economic losses for which he sued. In denying the owner's claim on both nuisance and negligence theories, the court noted the well-recognized principle outlined in the Restatement Second of Torts that:
 
 
 12
 One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently
 
 
 13
 (a) causing a third person not to perform a contract with the other, or
 
 
 14
 (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or
 
 
 15
 (c) interfering with the other's acquiring a contractual relation with a third person.
 
 
 16
 Restatement (Second) of Torts Sec. 766C (1979).
 
 
 17
 The damages for diminution in property values claimed by Landowners here are similar in kind to those at issue in Philip Morris: They are pure economic or pecuniary losses in the absence of direct physical impact. Landowners urge that Star Enterprise's negligence has prevented them from selling their homes because they cannot afford to sell at the reduced value. Complaint p 13. The "stigma" caused by the oil spill has reduced the value of Landowners' homes because of "fear in the minds of the buying public." Complaint p 15. In essence, Landowners argue that Star Enterprise's negligence has interfered with their ability to contract with third parties for the sale of their homes, the same type of damages for which the Virginia Supreme Court imposed a physical impact requirement in Philip Morris.[9]
 
 
 18
 Landowners rely upon Pruitt v. Allied Chemical Corp., 523 F.Supp. 975 (E.D.Va.1981), in arguing that Virginia law permits recovery for pure economic loss in the absence of direct physical impact. In Pruitt, the plaintiffs were individuals who derived their livelihoods from marine life in the Chesapeake Bay which had been polluted by chemicals allegedly discharged into the Bay by the defendant. The federal district court, construing Virginia law, permitted those plaintiffs who were commercial fishermen, as well as owners of boats, tackle and bait shops, and marinas, to proceed on negligence and nuisance theories against the defendant although the damages claimed were purely economic and there was no direct physical impact on the plaintiffs' property.
 
 
 19
 Pruitt, however, constitutes an exception to the general rule prohibiting the recovery of purely economic losses absent physical impact.[10] In cases in which a plaintiff's business is partially based upon the exercise of a public right, the plaintiff may be able to recover purely economic damages caused by a defendant's negligence in polluting the public resource upon which the plaintiff relies. See, e.g., Louisiana ex rel. Guste v. M/V Testbank, 752 F.2d 1019 (5th Cir.1985) (en banc) (holding that defendants who were responsible for collision resulting in pollution of river were liable to commercial fishermen), cert. denied, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); Union Oil Co. v. Oppen, 501 F.2d 558 (9th Cir.1974) (holding commercial fishermen may recover for pollution resulting from defendant's oil spill); Burgess v. M/V Tamano, 370 F.Supp. 247 (D.Me.1973) (permitting commercial fishermen and clam diggers to recover lost profits due to oil spill on a nuisance theory); see also Restatement (Second) of Torts Sec. 821C cmt. h, illus. 11 (1979) (explaining that commercial fishermen may recover for a public nuisance that pollutes public waterways and reduces their profits because they suffer a particular harm distinct from that of the community at large). Landowners have cited no cases establishing an exception to the general rule disallowing recovery for economic harm absent physical impact under the circumstances presented in this case. Thus, we conclude Landowners cannot recover for Star Enterprise's alleged negligence without demonstrating an actual physical encroachment on their properties.
 
 3. Virginia's State Water Control Law
 
 20
 The final count of Landowners' complaint asserts damages under section 62.1-44.34:18 of Virginia's State Water Control Law which states that:
 
 
 21
 C. Any person discharging or causing or permitting a discharge of oil into or upon state waters, lands, or storm drain systems within the Commonwealth ... shall be liable to ...
 
 
 22
 4. Any person for injury or damage to person or property, real or personal, loss of income, loss of the means of producing income, or loss of the use of the damaged property for recreational, commercial, industrial, agricultural or other reasonable uses, caused by such discharge.
 
 
 23
 Va.Code Ann. Sec. 62.1-44.34:18(C)(4) (1992). The statute imposes strict liability for discharges of oil onto private and public lands. Gollobin v. Air Distrib. Co., 838 F.Supp. 255, 257 n. 7 (E.D.Va.1993). Landowners urge the statute does not require actual physical damage to property to recover as the district court held, but rather that they may recover under the statute for the diminution in the value of their properties as a result of the properties' proximity to the oil spill. Star Enterprise maintains that the statute provides relief only for "injury to property," which necessarily imposes a physical impact requirement.
 
 
 24
 The Supreme Court of Virginia has not specifically addressed whether the term "injury to property" as it is used in the Virginia State Water Control Law includes mere diminution in value to property absent a physical impact. Star Enterprise points out, however, that the Supreme Court of Virginia has defined that term as it is used in another statute. A Virginia statute abolishes lack of privity as a defense in cases "where recovery of damages for injury to person, including death, or to property resulting from negligence is sought." Va.Code Ann. Sec. 8.01-223 (1992). In construing that statute, the Virginia Supreme Court has held that the term "injury to property" does not encompass purely economic losses. See, e.g., Ward v. Ernst & Young, 246 Va. 317, 435 S.E.2d 628, 633 (1993); Blake Constr. Co. v. Alley, 233 Va. 31, 353 S.E.2d 724, 726 (1987); see also Bryant Elec. Co. v. City of Fredericksburg, 762 F.2d 1192, 1195 (4th Cir.1985) ("A proper reading of the express terms of Sec. 8.01-223 ... would seem to require some physical injury to the plaintiff's property...."). Star Enterprise claims the Virginia Supreme Court similarly would not construe "injury to property" to include mere economic losses caused by the diminution in value of property as Landowners urge here. We find this argument persuasive.
 
 
 25
 In addition, section 62.1-44.34:18 of Virginia's State Water Control Law imposes strict liability for damage resulting from oil spills where liability was previously imposed for negligent conduct only. As previously noted, generally accepted principles of tort law do not recognize claims for damages for negligent conduct in circumstances such as those alleged by Landowners in the absence of an actual physical impact on the property. If the Virginia legislature had wished not only to extend liability for oil spills to reasonable conduct, but also to expand that liability beyond common-law boundaries and extend it to all property owners whose property values were adversely affected by an oil spill, it certainly would have done so in far more express terms. We therefore conclude the district court correctly dismissed Landowners' claim for damages under Virginia's State Water Control Law.[11]
 
 
 26
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The complaint alleges that Star Enterprise is a joint venture partnership between defendants Texaco Refining and Marketing (East) and Saudi Refining, Inc. This opinion shall refer to all defendants collectively as "Star Enterprise."
 
 
 [2]
 The federal and state governments have required Star Enterprise to undertake certain remediation efforts which include monitoring the spread of the plume by drilling numerous wells in the area, installing a segmented trench recovery system and containment trenches, and repairing storm sewers. Landowners allege these activities have greatly interfered with residential life in Mantua
 
 
 [3]
 The strict liability claim is based on an alleged violation of Section 62.1-44.34:18 of Virginia's State Water Control Law, Va.Code Ann. Secs. 62.1-44.2 to 62.1-44.34:28 (1992)
 
 
 [4]
 The Virginia Supreme Court has not squarely addressed the issue presented in this case. Star Enterprise directs our attention to a similar case which was dismissed by a Virginia circuit court. See Greene v. Star Enterprise, At Law No. 118167 (Va.Cir.Ct. Jan. 7, 1993), appeal dismissed, Record No. 930553 (Va. March 11, 1994). Although lower state court decisions are entitled to some consideration, Bryant Electric Co. v. City of Fredericksburg, 762 F.2d 1192, 1194-95 (4th Cir.1985), we do not treat Greene as dispositive of the issue before us
 
 
 [5]
 The complaint alleges Landowners "during the period immediately after the spill were exposed to significant health risks arising from toxic fumes and vapors." Complaint p 9. Landowners claim the toxic fumes "emanated from the sanitary sewer pipes and storm pipe system, and/or the fill material surrounding the pipes, Crook Branch Creek, drinking wells, and the response activities undertaken by defendant Star in containing the plume." Id. As a result, Landowners claim they "underwent a reasonable fear of being exposed to toxic materials that could cause headaches, nausea, respiratory problems and cancer." Id. (emphasis added)
 
 
 [6]
 Landowners allege Star Enterprise has interfered with their "reasonable use and enjoyment of the neighborhood of Mantua" because "[t]he quiet and peaceful atmosphere" of Mantua has been altered. Complaint pp 10, 11
 
 
 [7]
 Landowners rely on In re Paoli R.R. Yard P.C.B. Litigation, 811 F.Supp. 1071 (E.D.Pa.1992), aff'd in part, rev'd in part, 35 F.3d 717 (3d Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995). In that case, the plaintiffs' land had been contaminated, and they sued for the diminution in the value of their land resulting from that contamination. The district court granted the defendants' motion for summary judgment on those claims, finding the harm to the plaintiffs' property was temporary and remedial. Paoli, 811 F.Supp. at 1076
 The Third Circuit reversed that portion of the district court's ruling, finding the stigma associated with the presence of contamination on the property was in fact permanent damage. Thus, under those particular circumstances, the Third Circuit found the plaintiffs could recover for the diminution in value of their properties. Paoli, 35 F.3d at 796-97. The court distinguished cases such as Adkins and Berry, however, finding "[t]he rule we have articulated only allows recovery when there has been some initial physical damage to plaintiffs' land." Id. at 798 n. 64.
 
 
 [8]
 Landowners rely upon Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1205-06 (6th Cir.1988), for the proposition that they may recover for their reasonable fear of future ill health effects resulting from the oil spill. That reliance is misplaced. Sterling was a class action resulting from a chemical company's contamination of local ground water, including drinking wells. The class members suffered physical injury as a result of ingesting or otherwise using the contaminated water. Id. at 1197. There are no such allegations of personal injury resulting from the ingestion of harmful chemicals here
 
 
 [9]
 The district court dismissed the negligence count because it found the oil spill was not the proximate cause of the diminution in value of Landowners' properties as a matter of law. The physical impact requirement in cases involving purely pecuniary or economic losses is sometimes stated in terms of proximate causation. See Restatement (Second) of Torts Sec. 766C cmt. a (1979) ("The explanation usually given by the courts, when one is given at all, is that the harm is too 'remote' for negligence liability and that the defendant's conduct is not the 'proximate cause.' "); Union Oil Co. v. Oppen, 501 F.2d 558, 563 (9th Cir.1974). Virginia courts, however, have not specifically couched the physical impact requirement in those terms. In Virginia, "a person is answerable for the consequences of a fault which are natural and probable...." Banks v. City of Richmond, 232 Va. 130, 348 S.E.2d 280, 283 (1986). Moreover, proximate causation is a fact-specific inquiry that is normally left to a jury. Koutsounadis v. England, 238 Va. 128, 380 S.E.2d 644, 646-47 (1989). Thus, the general rule of proximate causation in Virginia suggests that is not the basis upon which Virginia courts would dismiss this action. A Court of Appeals may affirm the district court's decision on any basis appearing in the record. Mason v. Clark, 920 F.2d 493, 495 (8th Cir.1990); United States v. Gould, 741 F.2d 45, 50 n. 5 (4th Cir.1984). We sustain the district court's dismissal of the negligence count because our examination of Virginia case law convinces us Virginia courts would impose a physical impact requirement under these circumstances. We express no opinion as to whether Virginia courts treat the physical impact requirement as an element of proximate causation
 
 
 [10]
 Indeed, the Pruitt court clearly acknowledged "the general rule both in admiralty and at common law ... that a plaintiff cannot recover for indirect economic harm." Pruitt, 523 F.Supp. at 977
 
 
 [11]
 This conclusion is supported by the fact that the only lower state court in Virginia to consider this issue determined that property owners could not recover under this section of the Virginia State Water Control Law in the absence of a physical intrusion onto their properties. See Greene v. Star Enterprise, At Law No. 118167 (Va. Cir. Ct. Jan. 7, 1993), appeal dismissed, Record No. 930553 (Va. March 11, 1994)