909 F.Supp. 991 (1995)
In re TUTU WELLS CONTAMINATION LITIGATION.
Rhoda J. HARTHMAN, et al., Plaintiffs,
v.
TEXACO INC., et al., Defendants.
No. 1989-107. Civil Action No. 1989-220.
District Court, Virgin Islands, D. St. Thomas and St. John.
December 20, 1995.
*992 Richard R. Knoepfel, Briggs, Knoepfel & Ronca, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, Jeffrey T. Eddy, Joseph B. Cox, Jr., James M. Hughes, Charles W. Patrick, Jr., Frederick J. Jekel, Ness, Motley, Loadholt, Richardson & Poole, Charleston, South Carolina, Thomas Alkon, Gordon Rhea, Thomas H. Hart, III, Alkon, Rhea & Hart, Christiansted, St. Croix, U.S. Virgin Islands, for PID-Harthmans.
Robert T. Lehman, Debra Rosen, William J. O'Kane, Christopher Gibson, Archer & Greiner, Haddonfield, New Jersey, Douglas L. Capdeville, Christiansted, St. Croix, VI, for Esso Standard Oil, S.A., Ltd., Esso Virgin Islands, Inc., and Esso Standard Oil Co. (P.R.).
Richard E. Daley, Law Offices of Pattie & Daley, Christiansted, St. Croix, U.S. Virgin Islands, Kell S. Damsgaard, Terri Jacobsen, Morgan, Lewis & Bockius, Philadelphia, PA, William Stack, Houston, Texas, for Exxon Corp.
Francis E. Jackson, Jr., Jacqueline Drew, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Daniel Bayard.
John Newman, Diane Siana, Porzio, Bromberg & Newman, P.C., Morristown, New Jersey, Kevin A. Rames, Christiansted, St. Croix, U.S. Virgin Islands, for Paul Lazare, Andreas Gal, The Duplan Corp., Laga Industries, Ltd., Panes Industries Inc. and Panex Co.
BROTMAN, District Judge, Sitting by Designation.
Presently before this court is the Motion of Esso and Exxon For Summary Judgment as to Liability On All Counts.[1] For the reasons set forth below, the court must deny this motion.

I. Factual and Procedural Background
Most of the underlying facts of this litigation were set forth in an Opinion dated August 13, 1993, published at 846 F.Supp. 1243 (D.V.I.1993) and supplemented in the Opinion of August 11, 1994, published at 157 F.R.D. 367 (D.V.I.1994). Familiarity with the underlying facts is therefore presumed. In addition to this motion, the Esso Defendants[2] and Exxon filed several other motions for summary judgment[3] each attacking a narrow issue of the Plaintiffs' case. Given the importance of each of the issues raised, the court notes for the convenience of the reader that it addresses each motion separately.
In support of its current motion, the Esso Defendants[4] argue that the Harthman property which is the subject of the current litigation has not actually been contaminated as a result of the any alleged contamination of the Turpentine Run Aquifer by the Esso Defendants. In fact, the Esso Defendants claim that the expert reports in this case show that *993 the Harthman property is unlikely to become contaminated barring the occurrence of extraordinary circumstances. Based on these assertions, the Esso Defendants argue that this court should grant summary judgment in their favor because the Plaintiffs will be unable to show that they have suffered any harm as a result of any contamination of the aquifer because their property has not been and will not become contaminated as a result of any such contamination.
In response, the Plaintiffs assert that they have been harmed by the contamination of the aquifer in two ways: (1) they have been prohibited from engaging in the business of selling well water which they would have pumped from their land and (2) they have suffered a diminished market value in their land. In light of such "harm," the Plaintiffs assert that their claims for trespass, nuisance, negligence and strict liability remain viable.

II. The Law

A. Summary Judgment Standard
The standard for granting summary judgment pursuant to Federal Rule of Civil Procedure 56 is a stringent one. Summary judgment is appropriate only if all the probative materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). In determining whether there remain any genuine issues of material fact, the court must resolve all reasonable doubts in favor of the nonmoving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983) cert. dismissed, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir.1972); Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1987). Significantly, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
Under the standards announced by the Supreme Court's trilogy in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Anderson, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and Matsushita, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48, 106 S.Ct. at 2509-2510 (emphasis in original). Indeed, where the moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. Id. at 248, 106 S.Ct. at 2510. Thus, once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleadings, Fed.R.Civ.P. 56(e), but must produce sufficient evidence that will reasonably support a jury verdict in its favor, id. at 249, 106 S.Ct. at 2510; J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring), and not just "some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1355; see also, Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir.1991), cert denied, 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (In opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or ... vague statements."); Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) ("unsupported allegations in [a non-movant's] memorandum and pleadings are insufficient to repel summary judgment").
A dispute involving a material fact is "genuine" only "if the evidence is such that a reasonable jury would return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Whether a fact is "material" is determined by the substantive law defining the claims. Id. at 248, 106 S.Ct. at 2510; United States v. 225 Cartons, 871 *994 F.2d 409, 419 (3d Cir.1989). The Supreme Court observed that "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude an entry of summary judgment." Id.; see also, Ness v. Marshall, 660 F.2d 517, 519 (3d Cir.1981) (role of district court is to determine whether genuine issue of material fact exists). Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510.
Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2510. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 860 (3d Cir.1990) cert. denied, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).
Although the summary judgment hurdle is a difficult one to meet, it is by no means insurmountable. "Where the evidence is so one-sided that it leaves no room for any reasonable differences of opinion as to any material fact" this Court will grant summary judgment. Tunis Bros. Co., Inc. v. Ford Motor Co., 763 F.2d 1482, 1489 (3d Cir.1985). Accordingly, in Celotex, the Supreme Court concluded that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." Celotex, 477 U.S. at 323-324, 106 S.Ct. at 2552-2553.

B. The Element of Harm
In the present motion, the Esso Defendants advance a narrow legal argument as a basis for this court to grant summary judgment in their favor. Specifically, the Esso Defendants argue that in order to prevail at trial on their trespass, nuisance, negligence or strict liability claims, the Plaintiffs must prove that they have suffered a physical harm[5]that is, the "harm the defendants cause must be physical, either bodily injury or property damage, or at least involve intrusion onto plaintiffs' land." Memorandum of Law of Esso and Exxon in Support of Their Motion for Summary Judgment as to Liability on All Counts at 8-9 (hereafter, the "Memorandum of the Esso Defendants"). Under their view of the law, the Esso Defendants argue that each of the Plaintiffs' claims fail because the Plaintiffs' land has not been contaminated by the Esso Defendants.[6] In addition, the Esso Defendants assert that the threat of future contamination is not enough to satisfy the requisite element of harm. Alternatively, the Esso Defendants argue that even if the threat of future contamination could constitute a cognizable harm, the threat of contamination involved in this case is too speculative to meet such a harm requirement.[7]
In the Virgin Islands, the various provisions of the Restatement (Second) of Torts relating to each of the Plaintiffs' claims govern the court's determination of the present motion. 1 V.I.C. § 4; Baumann v. Canton, 7 V.I. 60, 69 (D.V.I.1968). Under those provisions, *995 the court finds that a genuine issue of material fact exists as to each count of Plaintiffs' complaint.

1. Trespass
Although the physical harm argument asserted by the Esso Defendants strongly undermines the Plaintiffs' trespass claim, the court must reject the argument at the summary judgment stage. Restatement § 158 provides:
One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of another, if he intentionally (a) enters land in the possession of another, or causes a thing or third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove.
Restatement (Second) of Torts § 158 (emphasis added). In addition, Restatement § 163 provides:
One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.
Restatement (Second) of Torts § 163 (emphasis added). As these sections of the Restatement illustrate, a harm to the Plaintiffs' propertyphysical or otherwiseis not an element of the tort of trespass. Although a physical intrusion upon the Plaintiffs' land is an element of trespass in its own right, the Esso Defendants fold this requirement into their argument concerning the element of harm.[8] As one would expect, the Plaintiffs' respond to the Esso Defendants' harm argument by focusing on the legal issue of whether a physical harm is a necessary element of their claims. The Plaintiffs do not respond to the Esso Defendants' factual contentions that there has not been a physical intrusion onto Plaintiffs' property. Given the convoluted manner in which the Esso Defendants present their argument as to physical intrusion, however, the court is hesitant to award summary judgment on this claim.[9] If the Plaintiffs fail to show at trial that their property has been contaminated, the Esso Defendants can again challenge Plaintiffs' trespass claim prior to charging the jury.

2. Nuisance
With respect to the Plaintiffs' nuisance claim, the court acknowledges that the Esso Defendants' physical harm argument may have persuaded courts in other districts. However, this court must reject the Esso Defendants' attempt to inject such a requirement into the law of the Virgin Islands. Three provisions of the Restatement are relevant to the Plaintiffs nuisance claim for the purposes of the instant motion. First, Restatement § 821D provides:
A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land.
Restatement (Second) of Torts § 821D. Second, Restatement § 821F provides:
There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose.
Restatement (Second) of Torts § 821F. Third, Restatement § 7 defines broadly the term harm as follows:

*996 The word "harm" is used throughout the Restatement of this Subject to denote the existence of loss or detriment in fact of any kind to a person resulting from any cause.
Restatement (Second) of Torts § 7(2).
In this action, the Plaintiffs seek substantial damages as a result of an alleged nuisance caused by, among others, the Esso Defendants. Specifically, the Plaintiffs appear to seek compensation for lost profits from a planned well water business and diminution of the value of their property. In order to receive such damages, the Restatement requires the Plaintiffs to make two fundamental showings: (1) the existence of a nuisance and (2) significant harm as a result of that nuisance. Although the Esso Defendants arguably challenge only the latter requirement, they assert broadly that the Plaintiffs can not prove a nuisance without a showing of harm. Because this argument is technically incorrect, the court will address both of the Restatement's requirements.
Under the Restatement, the essence of a nuisance is the interference with the "use and enjoyment" of land. Restatement (Second) of Torts § 821D. To the extent that the Esso Defendants argue that a party interferes with another's use and enjoyment of his land only where that party causes a physical harm to the other's property, the court must reject their argument. The Restatement does not contemplate that an actionable interference occurs only where there has been a physical invasion of one's land. Rather, as the comment to Restatement § 821D emphasizes:
"`Interest in use and enjoyment' also comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using land is often as important to a person as freedom from physical interruption or freedom from detrimental change in the physical condition of the land itself."
Restatement (Second) of Torts § 821D, comment b.
In addition to the Restatement, the more well-reasoned, recent environmental contamination opinions addressing nuisance claims suggest that interference with one's use or enjoyment of his land may, but need not, arise from a physical harm or invasion to that land. Exxon Corporation v. Yarema, et al., 69 Md.App. 124, 516 A.2d 990, 1001 (1986) ("Exxon argues that ... a plaintiff may not recover in tort when there is no tangible or physical impact on plaintiff's property. We conclude that there is no such rule of law.") cert. denied, 309 Md. 47, 522 A.2d 392 (1987); Adkins v. Thomas Solvent Co., 440 Mich. 293, 487 N.W.2d 715, 721 (1992) ("The Court of Appeals focused on the lack of any physical intrusion onto plaintiffs' land, stressing that an interference with the use and enjoyment of land need not involve a physical tangible intrusion. We do not disagree with this rule of law."); accord, W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 87, at 622 (5th ed. 1984) ("[t]he interference that resulted and the physical harm, if any, from that interference proved to be substantial.") (emphasis added); see generally, Id., § 87 at 619-25.
Thus, the issue presented in this case is whether any contamination of the Turpentine Run Aquifer by the Esso Defendants interfered with the Plaintiffs' use or enjoyment of their property. For the purposes of this motion, the Esso Defendants argue only that the present lack of contamination dictates entry of summary judgment in their favor. Because the Esso Defendants do not argue alternatively that the Plaintiffs' have not suffered any interference with respect to their use or enjoyment of their land, the court finds that a genuine issue of material fact precludes such an award.[10]
*997 Further, to the extent that the Esso Defendants argue that the Plaintiffs property must sustain a physical harm in order to collect damages, the court must also reject their claim. Restatement § 821F requires that a plaintiff must sustain "significant harm" before he can collect damages resulting from a private nuisance. The Restatement defines the term "harm" broadly as the loss or detriment in fact "of any kind" which result from any cause. Restatement (Second) of Torts § 7(2). As the comments to that section establish, that definition includes the impairment of pecuniary advantage, intangible rights and other legally recognized interests. Restatement (Second) of Torts § 7(2), comment b. Further, neither Restatement § 821D nor § 821F limits the type of harm for which the Plaintiffs may recover under their nuisance claim. Specifically, the comments to Restatement § 7 provide:
Frequently, where "harm" is used in this Restatement, it is qualified by some limiting adjective, such as ... physical harm.... In each such case, the intent is to limit the rule stated to the particular kind of harm specified. Where no such limiting adjective appears, the word is to be understood in the general sense here defined.
Restatement (Second) of Torts § 7, comment b. Finally, the Esso Defendants have not cited and the court has been unable to locate any authority for the proposition that "significant" harm extends only to physical invasion or harm. Cf. Restatement (Second) of Torts § 821F, comment c. Thus, the court finds that under the Restatement a plaintiff may recover damages in nuisance for significant harms which may, but need not, be physical in nature. Because the Esso Defendants have not advanced any alternative challenges to any harm suffered by the Plaintiffs, the court can not find as a matter of law that the Plaintiffs will be unable to recover damages under this claim at trial.
Although the Esso Defendants directly support their argument by citing to the Fourth Circuit Court of Appeals' holding in Adams v. Star Enterprise, 51 F.3d 417 (4th Cir.1995), this court declines to follow Adams. In Adams, the Fourth Circuit held, under circumstances similar to this case, that a plaintiff may not recover damages in nuisance for environmental contamination which is not physically perceptible from the plaintiff's property. Adams, 51 F.3d at 423. The reasoning of the Adams case is unpersuasive and contrary to the more well-reasoned authority outlined above. In Adams, the landowners brought suit against operators of an oil distribution facility seeking damages even though their properties were not presently contaminated by the underground spill. Id. at 421. The district court dismissed the nuisance claims because it found the facts as alleged did not create a significant interference with the landowners' use and enjoyment of their land. Id. at 422. Rather than address this relatively narrow issue, the Fourth Circuit characterized the issue before it more broadly as whether the property owners may recover for the diminution in the value of their property and their reasonable fear of negative health effects resulting from the proximity of their property to an environmental hazard such as an underground oil spill. Id. at 421-22.
In construing Virginia law, the Fourth Circuit affirmed the district court's dismissal for reasons which are at best unclear. Although the Fourth Circuit begins its analysis by focusing on the lack of any interference with the landowners' use or enjoyment of their land as a result of the alleged oil spill, Adams, 51 F.3d at 422-23, the Court goes on to hold that future plaintiffs may not recover for any activity or condition complained of that is not "physically perceptible" from the plaintiffs' property. Id. at 423. The Fourth Circuit is cornered into articulating its novel "physically perceptible standard" because the Supreme Court of Virginia has held that a property owner can create a private nuisance by maintaining old junked automobiles on his property which interferes with his neighbors' use and enjoyment of their property. Foley v. Harris, 223 Va. 20, 286 S.E.2d 186 (1982). The Adams plaintiffs apparently relied on the Foley decision for the proposition that a nuisance claim is viable even without physical invasion of another's land. In response, the *998 Fourth Circuit attempts to distinguish the landowners' claims from the claim raised in Foley by articulating its physically perceptible standard. However, a review of the opinion does not show how a trial court is to apply that standard in future cases. In fact, the court is unaware from the facts outlined in the opinion how the Fourth Circuit is able to summarily conclude on the record before it that the oil spill underlying the landowners' claims was not nor could have been physically perceptible from any of the landowners' properties. Finally, in citing Adkins in support of its holding, the Fourth Circuit apparently overlooks not only the Adkins Court's assertion that physical invasion of a plaintiff's property is not a condition precedent to stating a cause of action for nuisance, Adkins v. Thomas Solvent Co., 487 N.W.2d at 721, but that the Adkins case holds merely that diminution of market value alone does not constitute an interference with the use or enjoyment of land giving rise to a claim for nuisance. Id.
In addition, public policy weighs against adoption of the Adams standard. Application of the physically detectible standard is overinclusive and as a result could under certain circumstances overwhelm the tort of nuisance. For example, a landowner might be prohibited by a municipal body from building a housing development on his land as a result of an abnormally dangerous condition on a nearby property. Cf. W. Page Keeton, et al., Prosser and Keeton on The Law of Torts § 87, at 620. Or as in this case, the landowners may be prohibited from pumping water from their land because of contamination of a nearby connected water supply. Not only would it work an injustice to deny any relief to such plaintiffs, but such denials of relief under the physically perceptible standard would lead to underdeterence of environmental contamination which may or may not otherwise be the subject of governmental laws and regulations. For these reasons and because this court is unwilling to otherwise inject such a requirement into the law of the Virgin Islands, the court respectfully declines to apply the physically detectable standard set forth in the Adams decision.[11]

3. Negligence and Strict Liability
With respect to the Plaintiffs' claims for negligence and strict liability, the court must also reject the Esso Defendants' extreme argument that the Plaintiffs must prove a physical harm in order to prevail on their claims for negligence or strict liability. With respect to negligence, Restatement § 430 provides:
In order that a negligent actor shall be liable for another's harm it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a legal cause of the other's harm.
Restatement (Second) of Torts § 430. With respect to strict liability, Restatement § 519 provides:

*999 One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
Restatement (Second) of Torts § 519(1).
Both § 430 and § 519(1) of the Restatement require a plaintiff to show harm in order to recover under these theories. As outlined in the previous section of this opinion, the Restatement defines the term "harm" broadly as the loss or detriment in fact "of any kind" which result from any cause. Restatement (Second) of Torts § 7(2). As the comments to that section establish, that definition includes the impairment of pecuniary advantage, intangible rights and other legally recognized interests. Restatement (Second) of Torts § 7(2), comment b. Further, neither Restatement § 430 nor § 519(1) restricts the type of harm that a plaintiff must suffer in order to collect under a theory of negligence or strict liability. Id. Thus, the court finds that the Plaintiffs may recover for negligence or strict liability without showing that they have suffered physical harm. Again, because the Esso Defendants have not presented any alternative arguments that the Plaintiffs have not suffered a harm as contemplated under Restatement § 7, the court can not find as a matter of law that the Plaintiffs will not be able to recover for their claims of negligence or strict liability at trial.[12]

III. Conclusion
For the reasons set forth above, the court must deny the present motion. The court will enter an appropriate order.
NOTES
[1] Although the Laga Defendants originally joined this motion, their subsequent settlement agreement with the Plaintiffs obviates the need for the court to address the merits of this motion with respect to these defendants.
[2] The "Esso Defendants" are Esso Standard Oil S.A. Ltd., Esso Virgin Islands, Inc. and Esso Standard Oil Co. (Puerto Rico).
[3] In addition to this motion, one or more of these parties has filed a summary judgment motion raising the following issues: (1) the statute of limitations, (2) liability, (3) failure to pierce the corporate veil and (4) assumption of the risk.
[4] For the purposes of this summary judgment motion, the court will include Exxon in its definition of the "Esso Defendants."
[5] In addition, the Esso Defendants argue that the Plaintiffs have also failed to show the necessary element of causation for each of their claims. However, their causation argument is linked to their physical harm standard. Specifically, the Esso Defendants argue that the Plaintiffs are unable to show the requisite element of causation because any physical contamination of the Harthman property has not been traced to the Esso Defendants. Because the court rejects the Esso Defendants' physical harm argument, the court need not address their related causation argument.
[6] However, the Esso Defendants concede that the Harthman property has been contaminated to some extent by petroleum related and chlorinated solvents. Memorandum of the Esso Defendants at 3-4.
[7] The two alternative arguments of the Esso Defendants assume that the Plaintiffs must show a physical harm in order to recover under any of their asserted claims. Because the court rejects the Esso Defendants' physical harm argument, the court need not address these alternative arguments.
[8] The court does not mean to suggest that counsel for the Esso Defendants are in any way confused about the elements of trespass. Rather, given the overall outstanding quality of the work product presented to this court, the court is convinced that the Esso Defendants' arguments concerning trespass was a strategic decision designed to strengthen their weaker arguments concerning the Plaintiffs' other claims.
[9] In a footnote in their memorandum, the Esso Defendants arguably assert that the "tort of trespass requires actual entry onto land and cannot be premised on the threat of future entry." Memorandum of the Esso Defendants at 15 n. 24. The court finds that such an assertion is not sufficient on summary judgment for two reasons. The Esso Defendants fail to cite any direct authority for the proposition that impending future entry cannot form the basis of a trespass action. More importantly, the Esso Defendants preface this assertion with a reference to their physical harm argumentagain confusing the separate issues of entry and harm.
[10] Even if the Esso Defendants did challenge the element of "use and enjoyment," the court would find that this element presents a genuine issue for trial. The Plaintiffs not only point to the closure of their wells as one example of such interference resulting from the contamination of the aquifer, but they have also argued that the possibility of future contamination interferes with their present use and enjoyment of their land. Cf. W. Page Keeton, et al., Prosser and Keeton on The Law of Torts § 87, at 620. Finally, although not challenged by the Esso Defendants in the present motion, the Plaintiffs appear to advance the controversial position that an alleged decline in the market value of their land as a result of that contamination also constitutes interference with its use or enjoyment of the land. But see, Adkins, 487 N.W.2d at 721-727.
[11] Viewed in the context of similar cases, this court acknowledges the growing concern of courts in allowing property owners whose property has not been physically contaminated by environmental pollution from collecting damages in nuisance. Rather than address those concerns by application of the Fourth Circuit's new physically perceptible standard, however, the court finds that they can be addressed adequately by application of the historic elements of nuisance. Under facts almost identical to those presented in Adams, the Adkins court denied damages to plaintiffs finding that a decreased property value alone does not constitute an interference with the use or enjoyment of their land a necessary element to a nuisance claim. Adkins, 487 N.W.2d at 721. Further, even if a claim for nuisance could be premised on a depressed property value, such plaintiffs would have to show that they have realized a significant harm as a result of a declined market value. Restatement (Second) of Torts § 821F. At least one district court has suggested that such property owners could not recover the reduction in market value where they have not sold their property (that is, realized the alleged loss). In re Paoli Railroad Yard PCB Litigation, 811 F.Supp. 1071, 1075 (E.D.Pa.1992). Finally, even if plaintiffs could realize that harm without a sale of their property, it is far from clear that the appropriate measure of damages is the amount by which the property value has declined especially where the environmental contamination which caused the decline in market value can be fully remediated and the property value ultimately restored. See generally, Howard Ross Cabot, Post-Remediation `Stigma' Damages Hinge on Hard Evidence of Residual Risk, 8 No. 9 Inside Litigation at 27 (October 1994).
[12] For reasons similar to those outlined in Footnote 6 of this opinion, the court would find a genuine issue of triable fact exists as to the element of harm for these claims even if the Esso Defendants had raised alternative arguments.