70 F.3d 1262
 64 USLW 2432
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William H. OGDEN; Gay E. TIFFANY, Plaintiffs-Appellants,
v.
STAR ENTERPRISE; TEXACO, INCORPORATED; Texaco Refining and
Marketing (East), Incorporated; Saudi Refining,
Incorporated, Defendants-Appellees.
 No. 94-2488.
 United States Court of Appeals,
 Fourth Circuit.
 Argued Nov. 1, 1995.
Decided Dec. 4, 1995.
 
 ARGUED: Ransom J. Davis, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellants. Richard Edward Wallace, Jr., HOWREY & SIMON, Washington, D.C., for Appellees. ON BRIEF: Nancy S. Allen, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellants. Anthony F. King,
 Nancy C. Libin, HOWREY & SIMON, Washington, D.C., for Appellees.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 William Ogden and Gay Tiffany appeal a summary judgment entered for defendants Star Enterprise et al. in their action seeking damages for personal injuries and alleged contamination of their real property by petroleum products. Because the plaintiffs' evidence would not permit a reasonable trier of fact to return a verdict in their favor, we affirm the summary judgment for the defendants.
 
 I.
 
 2
 Star Enterprise, a joint venture between a Texaco subsidiary and Saudi Refining, Inc., owns and operates a petroleum "tank farm" on Pickett Road in Fairfax, Virginia. In September, 1990, local residents learned that petroleum products had spilled from the tank farm and had spread out through the water table.
 
 
 3
 The Environmental Protection Agency (EPA) and Virginia Department of Environmental Quality responded promptly. Environmental Science & Engineering, Inc. (ESE), was hired as prime contractor for monitoring and remediation of the underground petroleum "plume." ESE has drilled over 200 wells in and around the plume and has taken many thousands of water, soil, and air samples. As a result, ESE and EPA officials know with a high degree of precision where the oil plume is. In their unanimous opinion, the plaintiffs' home is over 1,100 feet from the nearest boundary of the plume, which itself has stabilized.
 
 
 4
 Many lawsuits have been filed against Star Enterprise, in both state and federal courts. Every court that has addressed the issue, including this one, has limited recovery to those plaintiffs who can show that their property has been actually contaminated or that they have suffered actual physical harm. Neither fear of harm nor diminution in property value resulting from mere proximity to the plume is enough. See Adams v. Star Enterprise, 51 F.3d 417 (4th Cir.1995).
 
 
 5
 Ogden and Tiffany filed this suit in district court[1] against Star Enterprise and its corporate parents on March 2, 1994, based on several tort theories (nuisance, trespass, negligence, ultrahazardous activity, civil conspiracy, and violation of state water quality law). The district court dismissed the suit with leave to amend on July 5, 1994, because the complaint failed to allege actual physical impact on the plaintiffs' property or to their persons. An amended complaint was filed on July 15, 1994. Discovery followed quickly, and the defendants moved for summary judgment. On September 16, the district court orally announced its decision to grant summary judgment. A written opinion and order was filed October 7, 1994.
 
 
 6
 The plaintiffs filed a notice of appeal on November 2. A few days before, on October 28, the defendants had moved for correction of the court's opinion to reflect that certain statements were not findings of fact, but rather merely assertions in the plaintiffs' complaint. The district court amended its order on November 7, before this court had docketed the appeal.[2]
 
 II.
 
 7
 Summary judgment is appropriate unless the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Though the nonmoving party is entitled to have the evidence viewed in a light favorable to him, he must demonstrate, for every essential element of the claim, that he can survive a motion for directed verdict if the case be tried. The evidence here falls woefully short of this standard.
 
 
 8
 All of the expert testimony in the record--much of it from disinterested EPA and ESE officials--supports the defendants. The plume is nearly a quarter of a mile from the plaintiffs' property; hence, under Adams, they cannot recover.
 
 
 9
 The plaintiffs' evidence on this point is but a scintilla, if that. Tiffany and a friend were walking past the plaintiffs' in-ground pool on May 16, 1994, and they saw a rainwater puddle with an oily sheen on it. They knew of no possible source for the "oil" (if that is even what it was[3]) except the plume. They did not take a sample of the oily puddle, and it was gone the next day. Plaintiff Ogden never even saw it, and it has never reappeared.
 
 
 10
 Similarly, though the plaintiffs allege various minor medical problems (a skin problem for Tiffany and nasal congestion for Ogden), they presented no qualified medical expert to link their ailments to the plume, or even to petroleum of any kind or from any source. In fact, Ogden's breathing problems are of long standing, commencing with a deviated septum he suffered as a child and continuing through allergies that manifested themselves in 1989.
 
 
 11
 In short, the evidence in this case is an overwhelming mismatch in the defendants' favor; no reasonable jury could return a verdict for the plaintiffs. Accordingly, the judgment of the district court is affirmed.[4]
 
 AFFIRMED
 
 
 [1]
 Jurisdiction in the district court rested on diversity of citizenship
 
 
 [2]
 In its initial summary judgment opinion, the district court apparently took its previous opinion (which had granted the defendants' motion to dismiss the first complaint) and incorporated the statement of facts without much change. Accordingly, bare allegations of the complaint were stated as if they were uncontested facts (e.g., the plume is now spreading and its exact whereabouts are not known). The defendants moved to amend this language, pointing out that the record evidence was to the contrary. The district court amended the opinion to reflect its "original intent." The court stated that the corrections were made to mere "clerical mistakes" under Fed.R.Civ.P. 60(a)
 The plaintiffs assert that the district court needed leave of this court to correct its opinion. They are wrong. Under the plain language of Rule 60(a), the district court may correct inadvertent errors without leave "before the appeal is docketed in the appellate court."
 Moreover, it just does not matter. This court reviews a summary judgment de novo, and, on this record, the defendants are entitled to summary judgment.
 
 
 [3]
 Tiffany opined, based on her experience "around a lot of boats," that the sheen was diesel fuel. Dr. Kirk W. Brown, a professor of soil physics at Texas A & M University, countered that not even an expert can identify a sheen by its color. Furthermore, he explained that many substances other than petroleum--including everyday household products like soap--can cause sheens that are "oily" to the touch. Finally, Dr. Brown torpedoed the plaintiffs' theory that the "oil" in the sheen percolated to the surface from the water table; he explained that the water table at plaintiffs' property is 25 feet beneath the ground, and "physical or chemical forces known to be acting on the groundwater could not have elevated petroleum hydrocarbons through 25 feet of soil to the surface."
 
 
 [4]
 The defendants assert, as an alternate ground for affirmance, that plaintiffs' claims are barred by the applicable statutes of limitations. We need not reach this issue